UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NACHE AFRIKA,

                     Petitioner,                    **REPORT AND RECOMMENDATION**
                                                    **No. 02-CV-0458(RJA)(VEB)**

          -vs-

VICTOR HERBERT, Superintendent,
Attica Correctional Facility,

                     Respondent.
_____

## I.    INTRODUCTION

Petitioner, Naché Afrika ("Afrika"), filed a *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on charges of

first degree assault and third degree criminal possession of a weapon. This matter has been

referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the issuance of a Report and

Recommendation.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Afrika was indicted by a Monroe County Grand Jury on two counts of assault in the first

degree, one count of criminal possession of a weapon in the second degree, and one count of

criminal possession of a weapon in the third degree for his involvement in the shooting of

Jimmie Caldwell, Jr. ("Caldwell") on June 28, 1998. Afrika was tried before a jury in Monroe

County Court (Egan, J.).

At trial, the prosecution presented evidence through the testimony of Wayne Richardson

("Richardson"), Caldwell, and others, that at about 1:20 a.m. on June 28, 1998, Caldwell and his

Richardson, were standing near the East Coast Café, located on the corner of Hudson Avenue and Avenue D in the City of Rochester. After finding out that the bar required a cover-charge to enter, Caldwell and Richardson had decided not to go inside. Instead, while Richardson went into a nearby convenience store to buy two bottles of malt liquor, Caldwell used the pay telephone outside. When Richardson exited the store, Afrika approached them. Caldwell and Richardson had met Afrika at the "Juneteenth Festival" in Buffalo earlier that month. T.249; 253-60.[1] At the festival, there had been a large fight involving Richardson and a number of other individuals. T.244; 347. During the melée, the windows on Afrika's sport-utility vehicle (which apparently was covered by an insurance policy with a $500-deductible) were broken. T.246-47; 350.

On the night of the incident at issue here, Afrika walked up to Richardson, grabbed him by the shirt, and shook him, saying something about Richardson owing him $500.00 for the damage that was done to his vehicle at the Juneteenth Festival. Richardson stated that he did not have that kind of money, but that Afrika could have any money that he had on him. T.259-60; 313-14. Richardson observed that Afrika had a handgun in the waistband of his pants. T.358-59; 361-62. Caldwell approached and asked Afrika why he was blaming Richardson when, after the incident, Afrika indicated that he was not holding anyone accountable for the damage to his vehicle. In response, Afrika reached back and struck Caldwell in the face with an open hand. T.261-62; 364.

Caldwell said to Afrika, "[Y]ou fucked up," and then quickly walked away. T.263-64; 365. Richardson testified that as Caldwell turned the corner onto Avenue D, Afrika pulled out his gun, walked around the corner, and shot Caldwell once in the back. T.365. After being shot,

---

[1]         Citations to "T.__" refer to the trial transcript.

Caldwell fell to his knees, twisted himself around, and saw Afrika walking toward a maroon car with a gun in his hand. T.265-66; 318-19. Caldwell did not see anyone else in the area. Caldwell made his way the backdoor of the East Coast Café to find help. T.267.

Terry Overstreet ("Overstreet"), a bouncer at East Coast Café, was standing outside when the shooting occurred and corroborated the version of events related by Caldwell and Richardson. Overstreet recounted that he observed three men involved in what appeared to be a friendly discussion on the street outside the bar. T.469. Overstreet stated that he saw the larger, more muscular man slap the smaller of the other two men.[2] The muscular man then started slapping the taller of the other two men. The muscular man grabbed the taller man around the throat and pushed him up against the building. The smaller man walked away. Overstreet watched as the muscular man followed the smaller man around the corner, pulled out a gun, and shot the smaller man. T.471-73. Overstreet went to the aid of the injured man, later identified as Caldwell, while someone inside the bar called the police. Overstreet was unable to identify the shooter, however.

A few months after the shooting, Afrika saw Richardson at the Oak Tree Lounge and asked him how his friend was doing. On different occasion, Afrika saw Caldwell at the same bar. Caldwell testified that he spoke to Afrika, and Afrika said that he did not mean to shoot Caldwell. T.274.

Monique Bodine ("Bodine"), a former friend of Afrika's who was unfamiliar with Caldwell or Richardson, testified for the prosecution. Bodine recalled speaking with Afrika in the

---

[2]     Caldwell described himself as being about five-feet, four-inches tall and weighing 130 pounds. The trial record indicates that Richardson's height is five-feet, ten-inches tall. Afrika is about six-feet tall and has an "extremely muscular" build. *See* 9/24/01 Order Denying Motion to Vacate Judgment Pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 Order ("9/24/01 C.P.L. § 440.10 Order") at 3 n.1, Respondent's Second Appendix of Exhibits ("Resp't Second App.") L at 150.

street in front of her aunt's house sometime during the first part of August 1998. While they were

talking, Afrika left for a moment to speak to someone else. When he returned, Afrika told Bodine

that he was speaking to that individual regarding his most recent jail experience. When Bodine

asked Afrika why he had been in jail, Afrika responded that he had shot someone in front of the

East Coast Café after a verbal confrontation in which the victim had threatened him (Afrika). On

cross-examination, Bodine admitted that she had lodged a complaint alleging sexual assault

against Afrika in late August 1998, but that such charges had been dismissed by a grand jury.

Afrika testified in his own behalf at trial, admitting that he had been present outside the

East Coast Café on the night of the shooting. Afrika, however, stated that he did not have an

argument with Caldwell or Richardson, and he denied that he shot Caldwell. T.634-41.

According to Afrika, he was mingling with some friends across the street from the East Coast

Café when he was advised that Richardson and Caldwell were at the convenience store. Afrika

had not seen either men since the festival in Buffalo and decided to go speak with them; he

related that they both appeared intoxicated. Afrika related that he did not grab Richardson or

demand money from him but simply asked Richardson why he had not contacted Afrika to thank

him for his assistance during the altercation at the festival. According to Afrika, Caldwell agreed

that Richardson should have made an effort to contact Afrika. Afrika recounted that Richardson

then became verbally defensive, at which point Afrika walked back across the street. He testified

that he heard a gunshot about five to seven minutes later. Afrika stated that he subsequently had a

conversation with Richardson at the Oak Tree Lounge during which Richardson said that he

would recant his story about the shooting for one thousand dollars. T.641-44. Afrika claimed that

on two occasions, Caldwell said that he knew it was not Afrika who had shot him. T.644. Afrika

also denied having admitted the shooting to Bodine. T.645.

The defense presented the testimony of his petitioner's friend, Steve Robinson ("Robinson"), who claimed that he and two other individuals involved in the melée in Buffalo gave Afrika a total of $500 to cover the deductible on his auto insurance police. Robert Jackson ("Jackson"), a "witness demonstrably hostile to the prosecution," 9/24/01 C.P.L. § 440.10 Order at 5, Resp't Second App. L at 152, testified for the defense that he had been present in the parking lot of the bar where Afrika had encountered Caldwell and Richardson after the shooting. According to Jackson, he saw Afrika embrace the two men and heard Caldwell say to Afrika, "[D]on't worry about it – I know it wasn't you."

The jury was not instructed on count two of the indictment, which charged first degree assault under a theory of "depraved indifference." The jury returned a verdict convicting Afrika of the other count of first degree (intentional) assault and the count charging third degree criminal possession of a weapon but acquitting him of second degree criminal possession of a weapon. Afrika was sentenced, as a predicate felon, to a determinate term of twenty-five years in prison.

Represented by new counsel, Afrika appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court. Afrika also submitted a *pro se* supplemental appellate brief arguing that his trial counsel did not provide effective assistance. The Fourth Department unanimously affirmed the conviction on February 1, 2002. *People v. Afrika*, 291 A.D.2d 880 (App. Div. 4th Dept. 2002). Leave to appeal to the New York Court of Appeals was denied on May 20, 2002. *People v. Afrika*, 98 N.Y.2d 648 (N.Y. 2002)

On December 5, 2000, Afrika filed a *pro se* motion to vacate the judgment pursuant to

C.P.L. § 440.10(1)(b), (c), (f), and (h), arguing that (1) eyewitness Richardson committed perjury regarding the extent of his criminal history, a fact the prosecutor knew or should have known; (2) the prosecutor failed to provide petitioner with a complete copy of Richardson's record of criminal convictions; and (3) the prosecutor failed to advise petitioner of an alleged cooperation agreement between Richardson and the district attorney's office in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  A hearing was held in Monroe County Court (Bellini, J.) on June 7, 2001, and July 31, 2001, at which Afrika represented himself. The state court denied the C.P.L. § 440.10 motion in a written decision and order. *See* 9/24/01 C.P.L. § 440.10 Order, Resp't Second App. L. Leave to appeal to the Appellate Division was denied. *See* 5/29/02 Appellate Division Order, Resp't Second App. P.

This timely habeas petition followed. Respondent does not raise the defense of non-exhaustion with regard to any of Afrika's claims. Indeed, it appears to this Court that all of the claims are fully exhausted and properly before the Court on habeas review.

For the reasons set forth below, the Court recommends that Afrika's petition for a writ of habeas corpus be denied.

## III.    DISCUSSION

### A.    Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was

based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

**B.      Analysis of Claims Raised in the Petition**

**1.      Ineffective Assistance of Trial Counsel (Grounds One through Four)**

The first four grounds of Afrika's petition assert claims of ineffectiveness on the part of

his trial counsel. In assessing a claim of ineffective assistance of counsel, the Court is guided by

the two-pronged standard set forth by the Supreme Court in *Strickland v. Washington*,  466 U.S.

668, 687-88, 693-94 (1984). To prevail on such a claim, a petitioner must show both that his

attorney's conduct fell below an objective standard of reasonableness under prevailing

professional norms, and that he was prejudiced by counsel's unprofessional conduct. The

"prejudice" prong of the *Strickland* test requires the petitioner to show that but for counsel's

mistakes, there is a reasonable probability that the outcome of the trial would have been different.

*Id.* "Failure to make the required showing of either deficient performance or sufficient prejudice

defeats the ineffectiveness claim." *Id.* at 700.

**a.      Failure to call witness (Ground One)**

Afrika faults trial counsel for deciding to dismiss witness LaJohnda Collins ("Collins")

because she appeared intoxicated or under the influence of drugs when she arrived in court to

testify at trial. This claim was raised in support Afrika's first C.P.L. § 440.10 motion in state

court.[3] At the hearing held on this motion on January 5, 2000, defense counsel testified that when

Collins arrived in court, her eyes were glazed and she was giggling. Surmising that Collins was

---

[3]      Respondent has not provided the Court with a complete copy of the motion papers submitted in
connection with this 2000 C.P.L. § 440.10 motion; the only document which this Court has is the County Court order
dated February 18, 2000, denying the motion. *See* Respondent's First Appendix of Exhibits ("Resp't First App.") H
at 133-34.

under the influence of drugs or alcohol, defense counsel advised her that her testimony would not

be needed and that she was free to leave. Afrika testified at the hearing that when defense counsel

advised him of the witness' condition and the decision not to call her, he expressed strong

disappointment. Afrika argued in state court, and argues here, that defense counsel's failure to

request an adjournment so that the witness could return to testify was ineffective assistance.

Based on the foregoing factual findings, the state court held that it was "reasonable" for

defense counsel to conclude that the proposed witness' condition would have "severely

undermined" her testimony and thus calling her as a witness would have been "detrimental to the

defense." 2/18/00 C.P.L. § 440.10 Order at 2, Resp't First App. H at 134. Moreover, the state

court found, there was "no indication that the testimony of the proposed witness would have

changed the outcome of the trial." *Id.* The state court noted that at trial, Caldwell, the victim,

testified that he did not see who shot him in the back but stated that Afrika slapped him moments

before the shooting occur. In addition, the court noted, "another trial witness [*i.e.*, Richardson]

identified" Afrika as the assailant. *Id.*

The state court's rejection of Afrika's ineffective assistance of trial counsel claim was a

reasonable interpretation of clearly established federal law.  The decision "whether to call any

witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of

the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824

F.2d 1294, 1321 (2d Cir. 1987), *cert. denied*, 484 U.S. 958 (1987); *accord United States v.*

*Smith*, 198 F.3d 377, 386 (2d Cir. 1999).  Such decisions, "if reasonably made, will not constitute

a basis for an ineffective assistance claim." *Id.*; *see also United States v. Eyman*, 313 F.3d 741,

743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not

satisfy the standard for ineffective assistance of counsel."), *cert. denied*, 123 S.Ct. 1949 (2003).

Clearly, it was reasonable for trial counsel to dismiss a witness who appeared to be under the influence of drugs or alcohol since that factor greatly decreased the predictability of her testimony, and any evidence that she was intoxicated, in court, likely would have had a devastating effect on her credibility in the eyes of the jury. *See, e.g., Mullins v. Ramirez*, No. C 96-1055 FMS, 1996 WL 506927, at *5 (N.D. Cal. Sept. 3, 1996) (holding that trial counsel not ineffective for failing to pursue examination of witness where "testimony would have been, at best, unpredictable, and may have even been detrimental" to the defendant) (cited in *Santos v. Greiner*, No. 99 Civ. 1545 AJP,1999 WL 756473, at *9 (S.D.N.Y. Sept. 24, 1999) (denying habeas claim of ineffective assistance of trial counsel based on failure to more vigorously pursue the issue of a witness' alleged recantation during cross-examination; any number of strategic considerations might have explained the decision)). Furthermore, Afrika has not demonstrated that it was unreasonable for trial counsel to decide not to request an adjournment for Collins to return to testify on a later date. Since Collins appeared in court on one occasion under the influence of drugs or alcohol, it was understandable for trial counsel to conclude that there was little chance that she would take her obligation seriously the next time.  Most important, Afrika has not shown how the defense was prejudiced by the failure to call Collins as a witness. Collins' intended testimony would have been "that the victim did not know who his assailant was until after a third party told him that it was the Defendant[,]" 1/5/00 C.P.L. § 440.10 Order, Resp't First App. H at 133, raising potential questions concerning hearsay and the validity of her testimony as a percipient witness. It was never the victim's contention that he saw who the shooter was; the victim was shot in the back and thus was unable to see the shooter actually fire

the gun at him. Moreover, there was substantial circumstantial evidence tending to prove that Afrika was the shooter; the victim testified he had been in an altercation with Afrika just seconds before the shooting in which Afrika had slapped him, and that Afrika had displayed a handgun which was tucked into his waistband. Then, just after he was shot, the victim turned around to see Afrika walking away with a gun in his hand. And if this were not enough, there was direct evidence indicating that Afrika was the shooter–namely, the identification of him by eyewitness Richardson. Thus, the Court cannot find that Collins' proposed testimony would have altered the outcome of the trial by creating a reasonable doubt where one otherwise would not have existed, and petitioner cannot show that he was prejudiced by trial counsel's reasonable strategic decision not to call Collins as a witness. The Court therefore recommends that this claim not provide a basis for habeas relief.

### b.      Failure to object to jury instruction on identification (Ground Two)

Afrika contends that trial counsel was ineffective in failing to object to the trial court's jury instruction on identification. Afrika contends that the trial court had agreed to give an expanded charge and that trial counsel should have reminded the trial court of this fact when it came time to instruct the jury.  The record reveals that contrary to Afrika's contention, the trial court never agreed to provide the jury with the expanded identification charge that trial counsel had requested at the charge conference. The trial court declined to give the requested charge, stating that the charge it intended to give was sufficient. T.679. Trial counsel objected to the trial court's ruling. *Id.* Thus, the factual premise of Afrika's argument is not supported by the record. There is no basis for finding that trial counsel was ineffective in his handling of the issue. This claim accordingly should not provide a basis for habeas relief.

  **c.**  **Failure to object when the trial court failed to give an instruction on the privilege against self-incrimination (Ground Three)**

Afrika asserts that trial counsel was ineffective in failing to object when the trial court purportedly did not give a promised jury instruction regarding the effect of witness Richardson's exercise of his Fifth Amendment privilege against self-incrimination. This claim is not supported by the record, which reveals that the trial court did instruct the jury on the effect of a witness' invocation of his Fifth Amendment rights. Therefore, trial counsel cannot be faulted; since the trial court gave the charge which Afrika now claims was omitted, there was no basis for trial counsel to object. This claim lacks a factual or legal basis and should be dismissed.

  **d.**  **Cumulative error (Ground Four)**

Afrika's final allegation is that all of the foregoing deficiencies in trial counsel's performance, considered together, denied him of his right to the effective assistance of counsel. As discussed above, none of the "errors" alleged by Afrika to have been committed by trial counsel were errors at all. To the contrary, the record demonstrates that Afrika received competent representation from his trial counsel. There is no basis on the record before the Court to find otherwise.

  **2.**  **The verdict was repugnant (Ground Five)**

Afrika contends that his acquittal on the charge of second degree criminal possession of a weapon negates an essential element of the crime of first degree (intentional) assault, and therefore the verdict is repugnant. On direct appeal, the Appellate Division that the claim was not preserved for review. *People v. Afrika*, 91 A.D.2d at 881 (citing, *inter alia*, *People v. Alfaro*, 66 N.Y.2d 985, 987 (N.Y. 1985)). Notwithstanding that finding, the Appellate Division held that the

claim lacked merit:

> As long as the court's charge did not preclude the jury from concluding that defendant initially possessed the loaded pistol without intending to use it unlawfully against another, but decided to fire the gun at complainant as events unfolded, a verdict finding defendant guilty of intentional assault but not guilty of possession with unlawful intent is not repugnant. Here, [t]he court's charge, to which defendant had no objection, defined each charge separately and required that the jury consider them separately[.]

*Id.* (internal and other citations omitted; quotation marks omitted; alterations in original).

The Court agrees with respondent that the claim is procedurally defaulted due to the Appellate Division's reliance upon an adequate and independent state ground as the basis for its holding that the claim was unpreserved for review. The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted; quotation marks omitted); *accord, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Hayes v. Coombe*, 142 F.3d 517, 518 (2d Cir. 1998), *cert. denied*, 525 U.S. 1108 (1999).

Here, the Appellate Division held that Afrika's repugnant verdict claim was unpreserved since trial counsel did not object before the jury was discharged. *See People v. Afrika*, 91 A.D.2d at 881 (citing *People v. Alfaro*, 66 N.Y.2d at 987). Under New York law, a defendant must challenge an alleged inconsistent verdict before the jury is discharged in order to preserve the issue for appeal.  *See, e.g.*, *Alfaro*, 66 N.Y.2d at 987 ("As a general rule alleged errors must be raised at a time when they can be corrected at trial. Thus in jury cases any claim that the verdict

-12-

is repugnant must be made before the jury is discharged[.] . . . This permits the court to resubmit

the matter to the jury to obtain a consistent verdict, even if that may require changing an

"acquittal", on one or more counts, to a conviction[.]") (citations omitted). The Appellate

Division's decision rests on an adequate and independent state ground–namely, that the claim

was unpreserved under state law–thereby giving rise to a procedural default. *See Estrada v.

Senkowski*, No. 98 CIV. 7796(WHP), 1999 WL 1051107, at *13 (S.D.N.Y. Nov. 19, 1999) (state

appellate court's holding that petitioner's inconsistent verdict claim was unpreserved since

counsel did not object before the jury was discharged was an "adequate and independent state

ground" for the decision, precluding habeas review). In order to obtain habeas review of the

claim Afrika would have to show in his habeas petition "cause for the default and actual

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S.

at 750. On the record before it, the Court cannot find that either cause for the default, or prejudice

attributable thereto. Furthermore, Afrika has not made the factual showing necessary to qualify

for the "fundamental miscarriage of justice" exception. Therefore, Afrika cannot overcome the

procedural default and his repugnant verdict claim is barred from federal habeas review. *See

Schlup v. Delo*, 513 U.S. 298, 324-27 (1995) (stating that the fundamental miscarriage of justice

may be demonstrated by showing through "new reliable evidence–whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not

presented at trial," that "it is more likely than not that no reasonable juror would have convicted

him in the light of the new evidence").

        Even if Afrika's repugnant verdict claim were not procedurally barred, inconsistent jury

verdicts are not a ground for habeas relief. *See, e.g.*, *United States v. Powell*, 469 U.S. 57, 58, 69 (1984) ("[R]espondent argues that the jury could not properly have acquitted her of conspiracy to possess cocaine and possession of cocaine, and still found her guilty of using the telephone to facilitate those offenses. The Government does not dispute the inconsistency here. For the reasons previously stated, however, there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled."); *Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, *Dunn v. United States*, 284 U.S. 390, 393 (1932), and also with respect to verdicts that treat codefendants in a joint trial inconsistently, *United States v. Dotterweich*, 320 U.S. 277, 279, (1943)."); *United States v. Acosta*, 17 F.3d 538, 545 (2d Cir.1994) ("It has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty."); *accord, e.g.*, *United States v. Chang An-Lo*, 851 F.2d 547, 559-60 (2d Cir. 1988) (following *Powell* and declining to vacate arguably inconsistent verdicts), *cert. denied*, 488 U.S. 966 (1989).

In *Powell*, the Supreme Court reaffirmed the *Dunn* rule that "consistency in the verdict is not necessary" and noted that inconsistent verdicts are often the product of "mistake, compromise, or lenity," 469 U.S. at 65. According to the *Powell* court, justice would not be served by awarding criminal defendants new trials even where "verdicts cannot rationally be reconciled," *id.* at 69; *accord, e.g.*, *United States v. Alvarado*, 882 F.2d 645, 653 (2d Cir. 1989), *overruled on other grounds*, *Bailey v. United States*, 516 U.S. 137 (1995). The Supreme Court in *Powell* rejected, as "imprudent and unworkable, a rule that would allow criminal defendants to

challenge inconsistent verdicts on the ground that in their case the verdict was not the product of

lenity, but of some error that worked against them" because "[s]uch an individualized assessment

of the reason for the inconsistency would be based on either pure speculation, or would require

inquiries into the jury's deliberations that courts generally will not undertake." *United States v.*

*Powell*, 469 U.S. at 66; *accord, e.g.*, *United States v. Acosta*, 17 F.3d at 545-46 ("A court knows

only what the jury's verdicts were, not what the jury found, and it is not within the province of

the court to attempt to determine the reason or reasons for verdicts that are inconsistent."); *Chang*

*An-Lo*, 851 F.2d at 559-60.  According to the Supreme Court, a criminal defendant "already is

afforded protection against jury irrationality or error by the independent review of the sufficiency

of the evidence undertaken by the trial and appellate courts" and therefore "further safeguards

against jury irrationality" are not "necessary." *Powell*, 469 U.S. at 67. For the foregoing reasons,

even if Afrika's repugnant verdict claim were not procedurally defaulted, it also does not present

a federal constitutional claim cognizable on habeas review, and should be dismissed on that basis

as well.

### 3.      Violation of *Brady v. Maryland* (Ground Six)

Afrika contends that the prosecution failed to disclose (1) the full criminal record

(referred to in the state court proceedings as "the NYSIIS") of eyewitness Wayne Richardson. In

particular, Afrika complains that the incomplete NYSIIS provided to defense counsel at the time

of trial omitted a 1990 conviction from New York County for fifth degree criminal possession of

a controlled substance (a class D felony) and a 1991 conviction for attempted fifth degree

criminal possession of a controlled substance (a class E felony) from Bronx County. *See* June 7,

2001 Transcript of C.P.L. § 440.10 Hearing ("6/7/01Tr.") at 56-57; *see also* Resp't Second App.

A at 44-47. Richardson served one year and two months of state prison time on the attempted

possession conviction and two years and one month on the possession conviction. *See* Resp't

Second App. A at 44-47. Afrika also asserts that there was a cooperation agreement between

Richardson and the Monroe County District Attorney's Office regarding criminal charges

Richardson had pending at the time of Afrika's trial; according to Afrika, the prosecutor also

failed to disclose the existence of this alleged agreement. These claims were explored at a two-

day hearing on Afrika's 2001 C.P.L. § 440.10 motion after which County Court (Bellini, J.)

made extensive findings of fact and law in a written decision and order denying the claims. *See*

9/24/01 C.P.L. § 440.10 Order, Resp't Second App. L at 148-62.

### a.    Failure to disclose full criminal record of witness Richardson

The United States Supreme Court has held that it is a violation of the accused's

constitutional right to due process for the Government, in good faith or bad in bad faith, to

withhold any material, exculpatory evidence whether or not the defendant explicitly requests this

evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution's

suppression of requested evidence favorable to the defendant violates due process,

notwithstanding the prosecution's good faith); *United States v. Agurs*, 427 U.S. 97, 106 (1976)

(holding that prosecution's failure to disclose material, exculpatory evidence, even if it is not

requested by the defendant, constitutes a due process violation); *United States v. Bagley*, *United*

*States v. Bagley*, 473 U.S. 667, 682, 684 (1985) (1985) (holding that prosecution's failure to

disclose evidence, which, if admitted, would have had a reasonable probability of resulting in a

different verdict, is grounds for granting a petition under 28 U.S.C. § 2255). The Supreme Court

has explained that "[t]here are three components to a true *Brady* violation: The evidence at issue

must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Green*, 527 U.S. 263, 281-82 (1999).

Turning to the first component, there is no question that, as the state court found, the evidence regarding Richardson's two drug convictions was within the ambit of *Brady* material since it was information could have been utilized to impeach a government witness. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *Strickler*, 527 U.S. at 281-82. There is no distinction between exculpatory evidence and impeachment evidence for *Brady* purposes; failure to disclose either may constitute a violation. *United States v. Bagley*, 473 U.S. at 676. Thus, the state court in Afrika's case properly concluded that the information regarding Richardson's two narcotics convictions was *Brady* material.

With respect to the "suppression" element, the state court here held that the prosecutor did not suppress the *Brady* material, even inadvertently, because there was no evidence that the prosecutor or anyone else in the district attorney's office was aware of Richardson's two narcotics convictions or possessed a complete copy of Richardson's NYSIIS. *See* 9/24/01 C.P.L. § 440.10 Order at 12, Resp't Second App. L at 159. The prosecutor testified that at the time of trial in May 1999, he was not aware that Richardson had two felony drug convictions from 1990 and 1991. *See* 6/7/01 Tr. at 56-57. The state court further found that constructive knowledge could not be imputed to the prosecutor acting on behalf of the Monroe County District Attorney's office because the undisclosed narcotics convictions had not been prosecuted in Monroe County. *See* 9/24/01 C.P.L. § 440.10 Order at 12, Resp't Second App. L at 159 (citing, *inter alia*, *People v. Pressley*, 234 A.D.2d 954 (App. Div. 4th Dept. 1996), *aff'd*, 91 N.Y.2d 825; *People v.*

*Santorelli*, 95 N.Y.2d 412, 421 (N.Y. 2000)).

The state court noted that in order to comply with *Brady*, "'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). The Second Circuit has explained that the prosecutor is obligated to disclose any material, exculpatory information that is in its constructive possession–that is, any information that is in the possession of an "arm of the prosecution." *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975). An "arm of the prosecution" is any government agent or agency that investigates and provides information specifically aimed at prosecuting a particular accused. Thus, the Court may impute, to the prosecutor, the knowledge of any exculpatory evidence that is known to any government agent or agency involved in the prosecution of a criminal case. *See also Banks v. Dretke*, 540 U.S. 668, 695 (2004) ("Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed.").

Although "[a]n individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police,'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Kyles*, 514 U.S. at 437), "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require

[courts] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis," *id.* (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993), *aff'd*, 59 F.3d 353 (2d Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996)). Here, the two narcotics convictions were not obtained by the district attorney's office that prosecuted Afrika for the instant offenses. There is authority in this Circuit for the proposition that information about Richardson's criminal proceedings in a jurisdiction outside of the one in which Afrika was being prosecuted should not be imputed to the prosecutor here. *See Berger v. Stinson*, 97 F. Supp.2d 359, 367 (W.D.N.Y. 2000) (petitioner asserted that the prosecution's failure to search for and disclose to the defense a witness' criminal record violated *Brady*; district court held that "[a]t the very least . . . the information about [the witness'] criminal proceedings in Florida could not be imputed to the prosecutor" who handled petitioner's case) (citing *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir.), *cert. denied*, 404 U.S. 850 (1971) (refusing to impute knowledge of Florida prosecutor to Assistant United States Attorney in New York, and rejecting as "completely untenable [the] position that knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor") (internal quotes omitted); *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir.) (stating that "prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence"), *cert. denied*, 493 U.S. 932 (1989); *accord United States v. Jones*, 34 F.3d 596, 599 (8th Cir. 1994), *cert. denied*, 514 U.S. 1067 (1995); *United States v. Stuart*, 923 F.2d 607, 612 (8th Cir. 1991), *cert. denied*, 499 U.S. 967 (1991)).

Furthermore, the Second Circuit has explained that "*Brady* cannot be violated if the defendants had actual knowledge of the relevant information or if the documents are part of

public records and 'defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.'" *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997) (quoting *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir.1995), *cert. denied*, 516 U.S. 1165 (1996) (citing *United States v. Bermudez*, 526 F.2d 89, 100 (2d Cir. 1975) (state investigative files were available to defense with the exercise of due diligence)). At the C.P.L. § 440.10 hearing, trial counsel admitted, "[L]ooking at [the NYSIIS] today, it looks as though it's incomplete. But back then, I did not notice that it was incomplete." 6/7/01 Tr. at 31; *see also id.* at 27. Trial counsel stated that had he noticed that, he would have made further inquiry of the prosecutor to On direct examination, Afrika elicited from trial counsel that, based on the incomplete NYSIIS that was provided, it appeared that Richardson had a nine-year gap in his criminal history from about 1987 to 1996. *Id.* at 17; *see also id.* at 31-32. Furthermore, trial counsel noted that the partial NYSIIS with which he was provided indicated that Richardson had a third degree burglary arrest in the City of New York that was prosecuted in New York County in 1982. *Id.* at 19, 31. On cross-examination, trial counsel agreed that he had cross-examined Richardson about a New York County felony conviction–presumably the burglary conviction. *Id.* at 27. Trial counsel apparently was on notice that Richardson had a history of criminal activity outside of Monroe County. The Court recognizes that the prosecutor did, however, represent to trial counsel that he had provided all of the *Brady* material that he had on Richardson. Although Richardson's convictions from outside Monroe County were matters of public record, it appears that trial counsel himself would not have been able to request a NYSIIS on Richardson; the prosecutor testified that he "was not a licensed NYSIIS operator" and did not "have the authority to actually go into the computer and ask [that] it give [him] a NYSIIS on anyone[.]" 6/7/01 Tr. at

77. Thus, the prosecutor did not personally generate the NYSIIS; he requested it through the Department of Criminal Justice Services, which was neither an "arm" of the district attorney's office nor a participant in the investigation or prosecution of Afrika's case.

This appears to be a situation where the prosecutor undertook an attempt to obtain a complete criminal record with regard to Richardson but he did not succeed in doing so–not because of any bad faith but because of an apparent clerical error on the part of the operator generating the NYSIIS which, regrettably, neither the prosecutor nor did defense counsel noticed. Thus, while diligence seems to have been lacking to some extent on the part of both the prosecutor and defense counsel, but there certainly was no evidence of bad faith on the part of the prosecutor. However, in the context of *Brady*, a suppression made inadvertently and in good faith is still a suppression. *See Kyles v. Whitley*, 514 U.S. at 438.

A number of circuit courts have held that prosecutors can "suppress" evidence by failing to search for  background information, such as a witness' criminal history, that is readily available through routine investigation of the prosecution's files or the files of other government agencies *See Crivins v. Roth*, 172 F.3d 991, 997-98 (7th Cir. 1999); *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998); *United States v. Brooks*, 966 F.2d 1500, 1502 (D.C.Cir.1992); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir.1980) (cited in *Chandras v. McGinnis*, No. 01 Civ. 2519(LBS), 2002 WL 31946711, at *7 (E.D.N.Y.  Nov.13, 2002) and *Daniels v. Hollins*, No. CV-02-4495 (FB)(LB), 2006 WL 47412, at *6 (E.D.N.Y. Jan. 9, 2006)). It is, however, "less clear whether a prosecutor has suppressed evidence where he or she has diligently searched criminal history records but nonetheless overlooked a prior conviction." *Hollins*, 2006 WL 47412, at *6 (comparing *Hollman v. Wilson*, 158 F.3d at181 (no *Brady* violation where

prosecutor did not find record of conviction because a clerical error resulted in a witness being given two different criminal identification numbers) and *United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994) (finding no "suppression" for purposes of a *Brady* violation where government diligently searched national and local files for information about witness' criminal history but failed to search records of other states), with *Crivins*, 172 F.3d at 997-98 (finding a *Brady* violation where prosecutor failed to disclose witness' prior conviction under an alias despite the fact that the conviction may not have been easy to uncover)).

Here, the Court need not attempt to settle that question. The state court in Afrika's case rejected the theory that the prosecutor had constructive knowledge of the two narcotics convictions at issue because they were not prosecuted by the district attorney's office handling Afrika's case. Furthermore, the state court found that the prosecutor did not have constructive possession of the complete NYSIIS because that document was not generated by the district attorney's office but rather originated from the DCJS, which was not an agency acting on the prosecutor's behalf. The Supreme Court has not clearly established the precise point at which government agents become agents acting on behalf of the prosecution. *See United States v. Zagari*, 111 F.3d 307, 320 n. 13 (2d Cir.1997) ("The extent to which knowledge may be imputed from one federal investigative agency to another for *Brady* purposes is as yet unclear."); *accord Daniels v. Hollins* (citing *Smith v. Secretary of New Mexico Dept. of Corrections*, 50 F.3d 801, 825 n. 36 (10th Cir. 1995) ("In the absence of actual knowledge . . . the circuits are somewhat split as to the precise contours of when knowledge by an arm of the State will be imputed to the prosecution."). The Supreme Court has directed that, in the wake of AEDPA, the Court's review is limited to whether the state court's decision was contrary to or an unreasonable application of

clearly established federal law. *See Williams v. Taylor*, 529 U.S. at 405-07. Guided by this

deferential standard, the Court cannot find, on the facts of this case, that the state court's holding

regarding the element of "suppression" was contrary to, or an unreasonable application of *Brady*

and its progeny.

Even assuming that the prosecutor should be charged with constructive knowledge or

possession of information regarding Richardson's narcotics convictions or the complete NYSIIS,

and that therefor there was a "suppression" of the material, the Court agrees with the state court

that there was no *Brady* violation because "prejudice" did not result. *Kyles v. Whitley*, 514 U.S. at

434-35. Determining whether a defendant has been prejudiced by a prosecutor's failure to

disclose *Brady* information involves assessing the materiality of the evidence: Constitutional

error results, and a new trial is warranted, only when the "suppressed" exculpatory evidence is

"material" to the conviction. *Brady v. Maryland*, 373 U.S. at 87; *United States v. Payne*, 63 F.3d

at 1209. Undisclosed evidence is considered to be "material only if there is a *reasonable*

*probability* that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different." *United States v. Bagley*, 473 U.S. at 682 (emphasis supplied). The

Supreme Court has explained that a "'reasonable probability' of a different result is accordingly

shown when the government's evidentiary suppression 'undermines the confidence in the

outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473

U.S. at 678). Thus, a defendant successfully establishes a *Brady* violation by "showing that the

favorable evidence could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict." *Id.* at 435 (footnote omitted); *accord*, *e.g.*, *Payne*, 63 F.3d

at 1209.

In the present case, the state court indicated that it was applying the materiality standard set forth in *People v. Vilardi*, 76 N.Y.2d 67, 73 (N.Y. 1990). *See* 9/24/01 C.P.L. § 440.10 Order at 13, Resp't Second App. L at 160.  *Vilardi* represented a departure by the New York Court of Appeals from the then-recent federal standard for determining "materiality" under *Brady* set forth in *United States v. Bagley*, 473 U.S. at 682. The New York Court of Appeals declined to follow the *Bagley* standard and instead chose to afford state defendants increased protection when a specific discovery request has been made, holding that in such case a defendant need only show "'*reasonable possibility*' that the failure to disclose the exculpatory report contributed to the verdict remains the appropriate standard to measure materiality, where the prosecutor was made aware by a specific discovery request that defendant considered the material important to the defense." *Id.* at 77 (emphasis supplied). This standard is more favorable to defendants than the federal standard under *Bagley*, which does not set forth a special standard when there has been specific request by the defense for certain *Brady* material and requires a defendant to show a "*reasonable probability*" of a different result, has the suppressed material been disclosed, *see Kyles*, 514 U.S. at 434 (citation omitted). *Accord Berger v. Stinson*, 97 F. Supp.2d at 368 (citing *People v. Washington*, 180 Misc.2d 838, 842, 694 N.Y.S.2d 296 (N.Y. Sup. Ct.1999) ("*Vilardi* represented a decision by the New York Court of Appeals to depart from the Federal standard of 'reasonable probability' to afford State defendants the increased protection of the 'reasonable possibility' test in situations where *Brady* material was specifically requested[.]")).

The state court here noted that Richardson "was the only witness to testify that defendant was the individual who fired the shot at Caldwell" but "even discounting such testimony, the circumstantial case against defendant was strong." 9/24/01 C.P.L. § 440.10 Order at 13, Resp't

Second App. L at 160. Thus, it appears that the state court, in part, applied a "sufficiency of the evidence test." However, the Supreme Court has instructed that the "second aspect of *Bagley* materiality bearing emphasis . . . is that it is *not* a sufficiency of evidence test." *Kyles v. Whitley*, 514 U.S. at 434 (emphasis supplied).  The *Kyles* court explained that a "defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* at 434-35. In other words, a defendant "does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. Nevertheless, this Court is convinced that the state court, in the end, properly considered the impact of the excluded impeachment material and that its ultimate holding was not erroneous, as discussed below.

The state court observed that "while evidence of narcotics convictions may be impressionable [sic], negatively speaking, in the eyes of the jury, Richardson's credibility had been thoroughly and significantly attacked by defense counsel on cross-examination." 9/24/01 C.P.L. § 440.10 Order at 14, Resp't Second App. L at 161. As the state court noted, with the exception of the two narcotics convictions, the rest of Richardson's criminal history was brought out on both direct and cross-examination. *See id.* Accordingly, the state court found, the proof of the two additional convictions would have been "cumulative" and "would not have incrementally affected" the jury's evaluation of credibility. *Id.*

New impeachment evidence is not material, and "a new trial is generally not required when the testimony of the witness is 'corroborated by other testimony,' *United States v. Petrillo*,

821 F.2d 85, 89 (2d Cir. 1987), or when the suppressed impeachment evidence merely furnishes

an additional basis on which to impeach a witness whose credibility has already been shown to

be questionable, *see, e.g., id.* at 90[.]" *United States v. Payne*, 63 F.3d at 1210 (citing *United*

*States v. Rosner*, 516 F.2d 269, 273-74 (2d Cir. 1975), *cert. denied*, 427 U.S. 911 (1976); *Giglio*

*v. United States*, 405 U.S. at 154 (new trial not required where newly discovered evidence is

merely "possibly useful to the defense but not likely to have changed the verdict") (internal

quotes omitted)); *accord United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996); *United States v.*

*Avellino*, 136 F.3d 249, 257 (2d Cir. 1998) ("Undisclosed impeachment evidence is not material

in the *Brady* sense when, although 'possibly useful to the defense,' it is 'not likely to have

changed the verdict.'") (quoting *Giglio v. United States*, 405 U.S. at 154). Here, the two narcotics

convictions "merely furnishe[d] an additional basis on which to challenge" Richardson's

credibility, which had "already been shown to be questionable[.]" *Payne*, 63 F.3d at 1210.

Furthermore, defense counsel was aware of the remainder of Richardson's criminal record and

used it to "subject [him] to extensive attack," *id.* Richardson admitted on cross-examination to a

felony burglary conviction; a number of misdemeanor convictions; some incidents of domestic

violence, and an arrest for striking a young girl with his vehicle while illegally passing a stopped

school bus and fleeing the scene; driving with a suspended license; and allegations of driving

while under the influence of alcohol. Tellingly, trial counsel observed that he "thought [he] knew

more about Mr. Richardson's history than [the prosecutor] did." 6/7/01 Tr. at 33. Under these

circumstances, the state court reasonably applied clearly established federal precedent in

concluding that the undisclosed evidence of the narcotics convictions were cumulative, and

hence not material. In other words, it is not reasonably probable that cross-examination of

Richardson about the two drug convictions would have altered the outcome of the trial; the

material would not have placed the whole case in such a different light as to undermine

confidence in the verdict, *Kyles*, 514 U.S. at 434. The Court therefore recommends that habeas

relief not issue with respect to the *Brady* claim stemming from the failure to disclose evidence of

Richardson's two convictions for drug-related offenses.

### b.      Failure to disclose cooperation agreement

Afrika maintains that Richardson entered into a cooperation agreement with the district

attorney's office who prosecuted Afrika's case, pursuant to which Richardson received leniency

with regard to unrelated pending criminal charges in exchange for his favorable testimony at

Afrika's trial. In the context of the C.P.L. § 440.10 hearing, the state court examined the

pertinent documents *in camera* and concluded that there was no evidence whatsoever of any

cooperation of agreement between Richardson and the prosecutor. In fact, Richardson's defense

attorney testified there was no such cooperation agreement or promises of leniency between the

prosecution and his client. Afrika has offered no competent or credible evidence of any

undisclosed promises or agreements between the prosecution and Richardson.

Whether a cooperation agreement exist between the prosecution and one of its witnesses

is a factual determination. *Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003) (citing *Wedra v.*

*Thomas*, 671 F.2d 713, 717 (2d Cir. 1982)). Pursuant to 28 U.S.C. § 2254(e)(1), "a determination

of a factual issue made by a State court shall be presumed to be correct[,]" and the habeas

petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing

evidence," *id. Accord Shabazz*, 336 F.3d at 161 (citing *McKinney v. Artuz*, 326 F.3d 87, 101 (2d

Cir. 2003) (citations omitted in original)). Afrika asserts that Richardson's brother James told

-27-

him, on August 25, 2000, that Richardson "had served a <u>few</u> state prison terms and, obtained

leniency for his cooperation on the pending felony case and other unrelated charges." Petitioner's

C.P.L. § 440.10 Motion at 14, Resp't Second App. A at 24. The only evidence that Afrika has

offered in support of this hearsay is an unsworn letter from a person named "Jay" stating that "he

[presumably Richardson] was at Clinton in '91, here in Attica 92" and he went home from Marcy

in 93" or 94". All his beefs were for drugs and parole violations." Resp't Second App. A at 42.

This type of evidence would not be admissible in opposition to a summary judgment motion, *see*

*Kaminski v. United States*, 39 F.3d 84, 85 n.1 (2d Cir. 2003). As such, this evidence is not, in this

Court's opinion, admissible to rebut the presumption of correctness that must be accorded to the

state court's factual findings. *See Coleman v. Quarterman*, 456 F.3d 537, 543 (5th Cir. 2006)

(holding that unsworn statements of three individuals who were not present at the time petitioner

made his statement to the police, offered to prove that his confession was coerced and that he

was denied requested counsel, did not constitute clear and convincing evidence to rebut the

presumption of correctness accorded to the state court's factual finding that statement was

voluntary); *Burket v. Angelone*, 37 F. Supp.2d 457, 468 (E.D. Va. 1999) (holding that unsworn

affidavit of habeas petitioner's father and sworn affidavit from paralegal stating that petitioner's

father believed that information in his unsworn affidavit was true, but refused to sign it because

he did not want to upset his wife, did not constitute clear and convincing evidence as required to

rebut presumption of correctness of state court's factual determinations). The lack of credible

support for Afrika's assertion that a cooperation agreement existed, contrasted with the evidence

directly contradicting that contention, demonstrates that the state court properly rejected this

aspect of his *Brady* claim.

### 4.      Perjury by witness Richardson (Ground Seven)

Afrika contends that Richardson perjured himself at trial regarding the extent of his criminal history. The trial court, *sua sponte*, asked Richardson about the jail time that he had served. Richardson admitted serving a term of imprisonment in Rikers Island Jail on a petit larceny conviction, but he denied serving time in Monroe County Jail or any other jails. Afrika points to the two narcotics convictions (one from New York County and one from Bronx County), discussed above in the context of the *Brady* claim, for which Richardson spent time in prison. Afrika contends that by denying that he had served any other time in jail, he Richardson perjured himself in response to the trial court's question.

This claim of alleged perjury was explored at the 2001 hearing on Afrika's C.P.L. § 440.10 motion. In denying relief, the state court found that after comparing Richardson's trial testimony with his criminal record as set forth in the complete NYSIIS, it was "evident that Richardson was not forthright with the trial court regarding his criminal record." 9/24/01 C.P.L. § 440.10 Order at 10, Resp't Ex. L at 157. (The state court did not explicitly state, however, that Richardson committed perjury.)  In arriving at the conclusion that the state did not knowingly suborn perjury by Richardson, the state court credited the hearing testimony of the prosecutor who stated that he had "no knowledge at the time of trial of either Richardson's drug convictions or time spent in prison in connection therewith and, therefore, had no knowledge that Richardson's testimony in this regard was untruthful." *Id.*

A conviction based upon a prosecutor's knowing use of perjured testimony, in violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and *Giglio v. United States*, 405 U.S. 150, 153 (1972), cannot stand. The Supreme Court has said that "the conviction must be set aside if (1)

'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003) (quoting *United States v. Agurs*, 427 U.S. at 103). If the prosecutor did not have actual or constructive knowledge of Richardson's two downstate narcotics convictions, he cannot be held responsible for knowing use of the perjured testimony at trial, in violation of *Napue* and *Giglio*. *See, e.g., Drake*, 321 F.3d at 345.

Here, the state court explicitly found that the prosecutor had neither actual nor constructive knowledge of the two narcotics convictions. That factual finding of prosecutorial ignorance is binding on this Court unless Afrika can demonstrate by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), that it was erroneous. See *Drake*, 321 F.3d at 345 ; *accord, e.g., Simmons v. Fisher*, No. 02 Civ. 4811(SHS)(MH), 2006 WL 2129770, at *11 (S.D.N.Y. July 26, 2006). Afrika has not made the evidentiary showing required to rebut the presumption of correctness that must be afforded to the state court's factual finding in this regard. Accordingly, having failed to meet the "knowledge" prong of the *Napue/Giglio* standard, Afrika's perjury claim does provide a basis for habeas relief.

The Court notes that the Supreme Court has held that the *knowing* use of witness perjury requires vacatur of a defendant's conviction "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. at 103; *accord Jenkins v. Artuz*, 294 F.3d 284, 293 (2d Cir. 2002). The Second Circuit, however, has held in the habeas context that even in the absence of the prosecutor's actual or constructive knowledge of witness perjury, newly discovered evidence of such perjury may require further due-process scrutiny in certain limited circumstances. *See Sanders v. Sullivan*, 863 F.2d 218,

222-25 (2d Cir. 1988) (*Sanders I*). The vitality of *Sanders* following AEDPA has been called into

question by a fairly recent Second Circuit decision, *Drake v. Portuondo*, 321 F.3d at 345. In

*Drake*, the Second Circuit observed that "[s]ince *Agurs* was decided on the basis of actual

knowledge (under *Brady v. Maryland*, 373 U.S. 83 (1963)), the language providing for habeas

relief where the prosecution 'should have known' of the perjury is in the nature of dictum." 321

F.3d at 345. The panel noted that it had "not yet considered what it takes to show that the

prosecution 'should have known' it was sponsoring perjury or, among other things, whether this

standard entails an exercise of due diligence." *Id.* However, the Second Circuit in *Drake*

"decline[d] to draw the contours of the phrase 'should have known' unless . . . presented with a

case that requires [it] to do so." *Id.* The *Drake* panel observed that although it had held in

*Sanders* that habeas corpus relief may be granted even in the absence of prosecutorial knowledge

of perjury, that decision in Sanders "explicitly relied on Justice Douglas' dissent in *Durley v.*

*Mayo*, 351 U.S. 277, 76 S.Ct. 806, 100 L.Ed. 1178 (1956)." *Id.* 345 n. 2. Thus, the Second

Circuit signaled that this aspect of *Sanders* is no longer persuasive precedent in the context of

federal habeas petitions decided  under the 1996 amendments to 28 U.S.C. § 2254, since

"AEDPA permits [the court] to rely only on clearly established Supreme Court precedent," *i.e.*,

the holdings, rather than the *dicta*, issued by the Supreme Court. *See id.* (The Second Circuit did

not decide the petitioner Drake's perjury claim on the merits but instead remanded the case to the

district court in order to further develop the record on the issue of the prosecutor's

knowledge–constructive or actual–of the alleged perjury. *See id.*)  Because the Supreme Court

has not clearly established that habeas relief is available in the complete absence of prosecutorial

knowledge of perjury, it appears that habeas relief may not be granted, consistent with 28 U.S.C.

§ 2254(d)(1) on this ground. *See id.* at 345 n. 2

Moreover, even if the Court were to analyze the claim without applying the AEDPA

standard, and were to evaluate the case against the Second Circuit's precedent as forth in *Sanders*

*v. Sullivan*, the Court would not be left "'with a firm belief that but for the perjured testimony,

the defendant would most likely not have been convicted'" *Ortega v. Duncan*, 333 F.3d at 108

(quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991) (quoting *Sanders*, 863 F.2d

at 226) and citing *United States v. Gallego*, 191 F.3d at 161). Here, as the state court noted, the

jury without a doubt was made aware of Richardson's criminal history through both the

prosecutor's direct examination and defense counsel's cross-examination:

> Richardson acknowledged [on direct examination] that he pleaded guilty to
> criminal mischief in 1983, that he was convicted of 'some other matters in
> Rochester City Court', and that he had charges pending in Monroe County. Upon
> questioning by the trial court (Egan, J.), Richardson admitted serving time in
> Rikers Island Jail for petit larceny, but denied serving time in the Monroe County
> Jail or any other jails. . . . Thomas Cocuzzi, Esq., defendant's attorney at trial,
> diligently cross-examined Richardson regarding the petit larceny and criminal
> mischief convictions, past arrests, and charges then pending against Richardson in
> Monroe County.

9/24/01 C.P.L. § 440.10 Order at 8, Resp't Second App. L at 155.  Richardson did not deny that

he had been convicted on two drug charges; he was not asked about these convictions by the

prosecutor or defense counsel because, as discussed above in the context of the *Brady* claim,

neither attorney had actual or constructive knowledge of them. His alleged perjury lies in the fact

that he served prison terms for those convictions; however, when asked an open-ended question

of whether he had served any other time in jail, he answered negatively. *See* T.337 (The Court:

"You served time in other jails?" Richardson: "No."). Certainly, Richardson was a key witness as

he was the only individual to testify directly that Afrika was the individual who fired the shot at

Caldwell. It is true that Richardson's perjury did not concern the evidence offered to support

Afrika's conviction, and rather went to the issue of Richardson's credibility. The Second Circuit

in *Sanders* explained that "type of perjured testimony which will trigger a due process violation

must be of an extraordinary nature" and "must leave the court with a firm belief that but for the

perjured testimony, the defendant would most likely not have been convicted." 863 F.2d at 226.

In this Court's opinion, the revelation that Richardson swore an oath to tell the truth but then lied

on the stand about the extent of time he had spent in prison is troubling and certainly could have

undermined his credibility, but it does not leave the Court with a "firm belief" that Afrika would

not have been convicted had the jury knew that Richardson had spent time in jail on drug-related

charges.

      The Court recognizes that there is Second Circuit precedent ordering a new trial when a

critical witness had committed perjury during trial and the prosecution was presumed not to have

had knowledge of the perjury. *See United States v. Wallach*, 935 F.2d 445, 455-59 (2d Cir. 1991)

(reversing conviction on direct appellate review where "centerpiece" witness lied about his

compulsive gambling; "[h]ad it been brought to the attention of the jury that Guariglia was lying

after he had purportedly undergone a moral transformation and decided to change his ways, his

entire testimony may have been rejected by the jury. It was one thing for the jury to learn that

Guariglia had a history of improprieties; it would have been an entirely different matter for them

to learn that after having taken an oath to speak the truth he made a conscious decision to lie");

*United States v. Seijo*, 514 F.2d 1357, 1364-65 (2d Cir.1975) (reversing conviction on direct

appellate review where a cooperating witness, when asked on cross-examination whether he had

ever been convicted of a drug offense, answered untruthfully that he had never been convicted of

such an offense; prosecution had no reason to know that the response was untruthful at the time it was given; despite the presence of other impeaching material during the trial the disclosure of the witness' false statement would have had a tremendous impact on the jury's credibility assessment of the witness).

In *Channer v. Brooks*, 320 F.3d 188 (2d Cir. 2003), a habeas petitioner attempted to rely on *Seijo* and *Wallach* to support his habeas claim based on the post-trial discovery that a key witness had committed perjury but the prosecution was presumed not to have had knowledge of the perjury. The Second Circuit explicitly held in *Channer* that *Seijo* and *Wallach* were unavailing to support the perjury claim in the petitioner's post-AEDPA habeas petition where the state court had made specific findings regarding the impact of the perjury:

> Even assuming, *arguendo*, that the facts of those cases are indistinguishable or provide a weaker basis for rehearing than the factual findings in the instant case, we may not grant Channer's petition on the basis of those cases because the instant case arises under 28 U.S.C. § 2254, as amended by AEDPA, which requires that deference be accorded to state court findings of fact, whereas *Wallach* and *Seijo* each arose as a direct appeal from a conviction following a jury trial and verdict in a United States District Court. *See Wallach*, 935 F.2d at 449; *Seijo*, 514 F.2d at 1358. In those cases, the Court of Appeals considered the impact of witness perjury in the first instance and determined that, without the perjury, a different result at trial was probable. In this case, however, the Connecticut trial and appellate courts have already examined the impact of Lewis's perjury, and each has concluded that the trial was fair notwithstanding the perjury, and that the jury would not have reached a different outcome if the perjury had not occurred. In accordance with 28 U.S.C. § 2254, as modified by AEDPA, our review of the state court determinations of facts is limited to an inquiry into whether the conclusion of the state trial court was unreasonable based on the evidence presented and whether petitioner has presented evidence in the District Court that clearly and convincingly rebuts the presumption that the state court's factual findings are correct.

*Channer*, 320 F.3d at 196. *Channer v. Brooks* thus instructs that the relevant assessment for a habeas court to make, where the state court has already considered the effect of the witness'

perjury on the verdict, is whether that determination was a reasonable determination of the facts

in light of the evidence presented. *See id.* ("In light of the evidence presented both at Channer's

trial and at his post-conviction hearing, the Superior Court reasonably determined that the impact

of Lewis's perjury was insufficiently strong to have produced a different outcome at trial."); 28

U.S.C. § 2254(d)(2) ("An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim . . .(2)

resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.").

      However, this Court, sitting in habeas review, may not assess the impact of Richardson's

perjury for the first time and may only consider whether the state court reasonably determined

that the trial was fair notwithstanding the perjury in light of all of the evidence presented at trial.

*See Channer v. Brooks*, 320 F.3d at 196.[4] As mentioned above, in addition to Richardson's

testimony, there was compelling circumstantial evidence against Afrika. As the state court noted,

> Caldwell testified that he was arguing with defendant moments before being shot,
> which argument included defendant slapping Caldwell across the face and
> Caldwell admonishing defendant that he "fucked up". Afer Caldwell had been
> shot in the back, he turned around to see defendant walking toward a maroon car
> with a gun in his hand. Although Terry Overstreet could not positively identify the
> shooter, his account of an argument between three men, his description of whom

---

[4]      The Second Circuit stated, "In this case, however, the Connecticut trial and appellate courts have
already examined the impact of Lewis's perjury, and each has concluded that the trial was fair notwithstanding the
perjury, and that the jury would not have reached a different outcome if the perjury had not occurred. In accordance
with 28 U.S.C. § 2254, as modified by AEDPA, our review of the state court determinations of facts is limited to an
inquiry into whether the conclusion of the state trial court was unreasonable based on the evidence presented and
whether petitioner has presented evidence in the District Court that clearly and convincingly rebuts the presumption
that the state court's factual findings are correct. The District Court undertook this inquiry and concluded that there
was no basis for disturbing the state court's findings–a decision we believe is correct for the reasons stated above and
by the District Court in its opinion of January 25, 2001." 320 F.3d at 196.

was consistent with the respective physical statures [sic] of Caldwell, Richardson, and defendant, closely paralleled Caldwell's story regarding the events leading up to the shooting. Overstreet also saw the shooter retreat from the scene, with gun in hand, toward a maroon car. Monique Bodine's testimony that defendant told her that he had been in jail for shooting someone outside of the East Coast Café in response to that person threatening him, is consistent with Caldwell's testimony that he told defendant he "fucked up". Defendant also placed himself at the scene of the crime, but told a markedly different version of events regarding a 'discussion' that occurred between himself, Caldwell, and Richardson approximately five to seven minutes before he heard a gunshot. Even though the Court did not have the opportunity to observe the demeanor of defense witnesses Robert Jackson and Steve Robinson, a reading of the trial transcript alone indicates that they were not credible witnesses.

9/24/01 C.P.L. § 440.10 Order at 13-14 (footnotes omitted), Resp't Second App. L at 160-61.

Caldwell also testified that during their altercation Afrika held up his shirt to reveal a handgun tucked into his waistband. Based on the foregoing, the state court concluded that the false testimony offered by Richardson–namely, his denial of additional jail time–did not contribute to the verdict: "Whether Richardson had been convicted of, and served time for, drug charges on two separate occasions is not material evidence, *i.e.*, evidence without which a conviction of assault in the first degree would not have been procured[.]" 2001 C.P.L. § 440.10 Order at 10-11, Resp't Ex. La at 157-58 (citation omitted). This Court cannot say that given the evidence presented at trial, the state court was unreasonable in determining that "the jury would not have reached a different outcome if the perjury had not occurred," *Channer*, 320 F.3d at 196. Accordingly, the Court recommends that habeas relief not issue on this claim.

     **5.    Failure to allow inquiry into alleged cooperation agreement (Ground Eight)**

     Afrika asserts that a cooperation agreement existed between the prosecution and eyewitness Richardson. He claims that the state court erroneously refused to permit him to personally examine a plea agreement entered into by Richardson (along with related sentencing

minutes).

This claim, which is related to Afrika's *Brady* and witness perjury claims, was fully

explored at the 2001 hearing on his C.P.L. § 440.10 motion. Richardson's defense attorney,

Jeffrey Regenstrief, who represented him during 1999 and 2000 with regard to certain criminal

charges to which Richardson had pleaded guilty, testified at the hearing, under oath, that the

terms of the plea agreement at issue did not include a promise of leniency in exchange for

Richardson's provision of testimony in Afrika's case. 6/7/01 Tr. at 95-96. Richardson testified at

the C.P.L. § 440.10 hearing but, through his attorney, pleaded the Fifth Amendment with respect

to each question regarding his criminal history and, in particular, the information contained in his

NYSIS (rap sheet). 7/31/01 Tr. at 7-12, 15. He did testify that he received no promise of leniency

with respect to the charges pending against him at the time of Afrika's trial in exchange for his

cooperation in testifying at Afrika's trial. 7/31/01 Tr. at 16. At Afrika's request, the state court

reviewed *in camera* the transcripts of the plea allocution in question and the related sentencing

minutes and found that "neither transcript disclose[d] anything relevant to a cooperation

agreement or the other issues raised at the present hearing." 2001 C.P.L. § 440.10 Order at 8,

Resp't Ex. L at 155. Later in the order, the state court also stated that "there was absolutely no

evidence that a leniency or cooperation agreement existed between Richardson and the Monroe

County District Attorney's Office." *Id.* at 11, Resp't Ex. L at 158.

This factual finding by the state court is presumed to be correct, *see* 28 U.S.C. §

2254(e)(1), and may be overturned only upon the presentation, by petitioner, of clear and

convincing evidence that it is incorrect, *see id.* In opposition to the testimony by Richardson's

attorney and Richardson that there was no benefit promised to that witness based on his

testimony at Afrika's trial, Afrika offers nothing but his own conclusory assertion, based on an

unsworn statement purporting to be from Richardson's brother, that there was a cooperation

agreement. As discussed above, that is not the type of "clear and convincing" evidence necessary

to rebut the state court's conclusion that there was no cooperation agreement which conferred a

benefit on Richardson in exchange for his testimony implicating Afrika in the Caldwell shooting.

This claim should not provide a basis for habeas relief.

6.      **Denial of requests for counsel and to call additional witness at C.P.L. §
        440.10 hearing (Ground Nine)**

Afrika's last claim is based on errors allegedly committed by the trial court during the

C.P.L. § 440.10 hearing. In particular, Afrika contends that the trial court improperly denied (1)

his request for counsel to represent him at the C.P.L. § 440.10 hearing and (2) his request to call

as a witness the assistant district attorney who had prosecuted Richardson on the charges pending

against him at the time of Afrika's trial.

As to the claim that the trial court refused to appoint counsel, the Court finds that this

claim is contradicted by the record. In its order denying the C.P.L. § 440.10 motion, the state

court noted that at the hearing, it "specifically asked defendant whether he was prepared to

proceed *pro se*, or whether he wished the Court to consider assigning counsel." 9/24/01 C.P.L. §

440.10 Order at 6-7, Resp't Ex. L at 153-54. Afrika "answered that he was prepared to proceed

*pro se*, and such was evident by defendant's performance at the hearing, which the Court notes

was tantamount to representation by a licensed attorney." *Id.* at 7, Resp't Ex. L at 154.

At the commencement of the C.P.L. § 440.10 hearing, the following colloquy occurred:

The Court:          Mr. Afrika, you filed these motions *pro se* and I had every
                    intention of conducting this hearing with you as *pro se*. I
                    understand, however, you called my office and wanted to

-38-

|  | know how long you were going to be here and who was going to be your attorney. So was your intent to act *pro se* at this hearing? I mean, you do actually have a right to have – an absolute right to have an attorney at this proceeding. And the papers were not done by an attorney, they were done by you. So it was my intent to have you proceed *pro se*. Are you ready to do that? |
|---|---|
| The Defendant: | No, I'm not. I don't have a problem proceeding *pro se*, but there was, Mr. Cocuzzi was a witness that I intended to call at this hearing. But I would rather not go forward without interviewing Mr. Coccuzzi prior to the actual hearing. In respect, I'm not prepared to go forward today and I would ask for approximately a week to adjourn this hearing, if at all possible. |

6/7/01 Tr. at 4-5. There was no further discussion about whether or not Afrika was going to proceed *pro se*; the only issue was whether an adjournment was going to be granted. 6/7/01 Tr. at 5-7. Ultimately, the state court granted a half-hour recess to allow Afrika to speak with this trial counsel, Thomas Coccuzzi, Esq. *See* 6/7/01 Tr. at 7. At that point, Afrika indicated that he was ready to proceed. *See* 6/7/01 Tr. at 8.

In his petition, Afrika asserts that the "hearing judge flatout [sic] stated petitioner was to proceed *pro se* or she would rule solely upon submissions and counsel [sic] was denied as untimely." Petition at 15 (Docket No. 1). This statement is not supported by the hearing transcript. Furthermore, although Afrika indicated at the beginning of the hearing that he was not ready to proceed, it is apparent that his reason was that he had not yet been able to confer with his trial counsel, whom he had intended to call as a witness at the hearing. Afrika clearly stated that he did not have a problem with proceeding *pro se,* however. The state court gave Afrika ample opportunity to state that he did not want to proceed *pro se*, but Afrika maintained that he was prepared to go forward without an attorney. Thus, this Court can find no basis to fault the state court for accepting Afrika's representations, on the record, that he was capable of representing

himself at the C.P.L. § 440.10 hearing.

On the second day of the hearing, during Afrika's cross-examination of eyewitness Richardson, Afrika apparently became extremely frustrated due to Richardson's invocation of his Fifth Amendment privilege against self-incrimination. *See* 7/31/01 Tr. at 23:

| | |
|---|---|
| The Defendant: | So, in essence, this whole proceeding was just to have his [Richardson's] body here and just to reflect for the record in the event that this motion is denied that I did have the right to call him and you did allow me to call him as a witness, basically. |
| The Court; | This proceeding was to give you an opportunity to question Mr. Richardson which I am doing. However, as I have indicated before, just like you have certain Constitutional rights, Mr. Richardson has certain Constitutional rights. The fact he is choosing to invoke those rights in now way changes the fact that he is here, that you have an opportunity to examine him. What his answers are I cannot control. . . . |

7/31/Tr. at 23. At that point, Afrika noted an objection pursuant to "*People v. Moynihan*" and "request[ed] that counsel be assigned for the evidentiary hearing." *Id.* at 23-24. Afrika argued that he was "being effectively denied cross-examination – direct of Mr. Richardson." *Id.* at 24. Afrika then proceeded to argue about the prosecutor's alleged *Brady* violation regarding Richardson's criminal history and to assert that, essentially out of fairness, Richardson should be forced answer a question as to whether he "recall[ed] having a conference with Mr. Regenstreif regarding any leniency, whether or not there was any conversation between he [sic] and Mr. Nitti [the prosecutor] regarding any leniency for his testimony at trial." 7/31/01 Tr. at 25-26. As the state court observed, Richardson had answered that question negatively. 7/31/01 Tr. at 26. Thus, although Afrika appeared to make a request for counsel midway during the hearing, it is apparent to this Court that what he wanted was not an attorney but rather a way to force Richardson to

answer questions about his criminal history and not invoke his Fifth Amendment right. No attorney, no matter how skillful, would have been able to accomplish this task. In other words, Afrika was not really requesting the assistance of counsel but rather was objecting to the curtailment of his cross-examination of Richardson created by that witness' invocation of his privilege against self-incrimination.

With respect to the state court's denial of the request to call assistant district attorney Timothy Rath ("Rath"), Afrika speculates that this uncalled witness "may have entered into the agreement with Richardson." Petition at 16 (Docket No. 1). Afrika's personal belief is the only evidence he has been able to offer regarding any alleged cooperation agreement between the prosecutor and Richardson. Furthermore, Afrika did *not* actually make a request to call Rath as a witness at the hearing; when the state court asked if he had further witnesses, Afrika clearly indicated, "No." 7/31/01 Tr. at 27. In any event, there was no basis for calling another assistant district attorney about any cooperation agreement with Richardson because both Richardson and his defense attorney had just denied that Richardson was ever granted leniency in exchange for his testimony at Afrika's trial. Thus, as the state court noted, that mooted any question directed to Rath on that issue. *See* 7/31/01 Tr. at 26.

After reviewing the transcript of the C.P.L. § 440.10 hearing, the Court can find no error in the trial court's handling of either "request." Accordingly, the Court recommends that habeas relief not issue on Afrika's claim that the state court committed errors during the C.P.L. § 440.10 hearing.

## IV.  CONCLUSION

For the reasons set forth above, the Court recommends that the petition for a writ of

habeas corpus filed by Nache Afrika be **DENIED**. Furthermore, the Court believes that Afrika has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue with respect to any of Afrika's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: April 12, 2007
Buffalo, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Buffalo, New York
        April 12 , 2007.